# Arnold & Porter

Sean A. Mirski
+1 202.942.6106 Direct
Sean.Mirski@arnoldporter.com

May 23, 2023

The Honorable Deborah S. Hunt
Clerk, U.S. Court of Appeals for the Sixth Circuit
540 Potter Stewart U.S. Courthouse
100 E. Fifth Street
Cincinnati, OH 45202-3988

Re:     Supplemental Authority Pursuant to Fed. R. App. Pro. Rule 28(j) in
*Soto v. Siekfer* (No. 21-04229)

Dear Ms. Hunt:

Mr. Soto respectfully submits as supplemental authority the new panel opinion in *Crawford v. Cain*, No. 20-61019 (5th Cir. May 19, 2023), which affirms that decision's limited scope and clarifies why its reasoning does not reach this case.

*Crawford* is central to the State's argument about the scope of habeas relief. In its brief, the State argued that habeas relief should never be granted without "a plausible claim to factual innocence." State Br. at 4. The State cited no case besides *Crawford* where any court has applied such a novel and expansive rule.

Mr. Soto observed in response that even *Crawford* was limited by its terms to "state prisoners" following a state "conviction," and that it did not extend to pre-trial challenges like that brought by Mr. Soto. Reply Br. at 28. Mr. Soto also noted that *Crawford*'s logic did not encompass double-jeopardy claims, which have been an established part of the history of habeas corpus for well over a century. *See* Reply Br. at 27-28 (citing *Ex parte Lange*, 85 U.S. 163, 172 (1873)). In support, Mr. Soto quoted Judge Friendly, who acknowledged that any "factual innocence" requirement in habeas law would still permit petitioners to bring double-jeopardy claims. *Id.* at 29.

On May 19, 2023, the *Crawford* panel withdrew its original opinion and issued a revised opinion that clarified the decision's scope in ways consistent with Mr. Soto's arguments. First, the panel made clear that its decision applies *only* to challenges to a detainee's "underlying *conviction*," not "his *sentence*" (much less his pre-trial custody).

**Arnold&Porter**

Hon. Deborah S. Hunt
May 23, 2023
Page 2

Slip op. at 18 n.5 (emphasis in original). Second, after quoting Judge Friendly and citing *Ex parte Lange*, the panel clarified that a detainee may "satisfy the law and justice requirement" even when he "challenges [a] guilty conviction," so long as that challenge alleges "legal errors[] deeply rooted in the Great Writ's history." *Id.* As Mr. Soto explained (and Judge Friendly agreed), double-jeopardy claims fall well within that category of challenges.

  *Crawford* itself thus undermines the State's novel and far-reaching argument about the scope of habeas relief.

       Respectfully submitted,

       /s/ Sean A. Mirski

       Sean A. Mirski

Attachment

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 19, 2023

Lyle W. Cayce
Clerk

No. 20-61019

---

CHARLES RAY CRAWFORD,

*Petitioner—Appellant,*

*versus*

BURL CAIN, *Commissioner, Mississippi Department of Corrections*;
EARNEST LEE, *Superintendent, Mississippi State Penitentiary*,

*Respondents—Appellees.*

---

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:17-CV-105

---

Before SMITH, DUNCAN, and OLDHAM, *Circuit Judges.*

ANDREW S. OLDHAM, *Circuit Judge*:

The petition for panel rehearing is DENIED. Because no member of the panel or judge in regular active service requested that the court be polled on rehearing en banc (FED. R. APP. P. 35 and 5TH CIR. R. 35), the petition for rehearing en banc is DENIED. The opinion is WITHDRAWN, and the following opinion is SUBSTITUTED:

Charles Crawford petitions for habeas relief. As a prisoner held under a state court judgment, Crawford must overcome the strictures of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). He also must prove that "law and justice require" relief. 28 U.S.C. § 2243. Crawford does neither. We affirm.

## I.

### A.

Crawford was convicted of raping a 17-year-old girl (Kelly Roberts), assaulting a 16-year-old girl (Nicole Cutberth) with a hammer, and raping and murdering a 20-year-old woman (Kristy Ray). The series of gruesome crimes began on April 13, 1991.

On that fateful day, Roberts and Cutberth were riding around Walnut, Mississippi. The girls went to a store to purchase fluid for the car. When they left, they saw Crawford—who at that time was Roberts's brother-in-law—and asked him to help put the fluid in the car. Crawford agreed.

Crawford then began his scheme to lure the girls to his house. He told Roberts that he needed to talk to her about something important but refused to say what. Roberts insisted he tell her. Eventually, Crawford agreed to tell her if she met him at a cemetery outside the city. Roberts reluctantly agreed.

Later that evening, the girls met Crawford at the cemetery. There, Crawford told Roberts that her boyfriend had pictures of her that were "pretty bad," that Crawford had gotten the pictures from her boyfriend, and that Crawford planned to get rid of them. Roberts told Crawford she wanted the pictures. Crawford replied that the pictures were at his house and that he would take her there. Roberts and Cutberth then got into Crawford's truck, and he drove them to his house.

No. 20-61019

Crawford drove the girls to an abandoned house near his and parked. He told Cutberth to stay in the car while he and Roberts got the photos. Once Crawford and Roberts entered the house, Crawford told Roberts to stay by the door so he could make sure nobody was home. When Crawford returned, he pulled a gun and put it to Roberts's head. Crawford told her to do what he said and no one would get hurt.

He ordered Roberts to get onto the floor. Roberts obeyed. Crawford taped her mouth shut. He then commanded her to put her hands behind her back. Roberts again obeyed. Crawford taped her hands together. Crawford then forced Roberts into a bedroom and onto a bed. He undressed her. And then he raped her.

Afterwards, Roberts begged Crawford not to hurt her friend. But Crawford didn't listen. He went outside and bludgeoned Cutberth on the back of the head with a hammer. Roberts heard the assault happen. Crawford then went back inside the house, grabbed Roberts, and forced her into his truck.

Eventually, Crawford let Roberts go and turned himself in to the police. The police found Cutberth alive, recovered the gun, and found Roberts's and Crawford's hair on used pieces of duct tape in Crawford's house. Crawford was charged with the rape and kidnapping of Roberts and the aggravated assault of Cutberth.

But this was not the end of Crawford's crimes. Crawford was let out on bond. While out on bond, Crawford kidnapped 20-year-old Kristy Ray. He took Ray to a secluded barn in the woods, where he raped and murdered her. The police quickly arrested Crawford. And Crawford admitted to raping and murdering Ray and led the police to Ray's body. He was charged with capital murder, kidnapping, burglary of an occupied dwelling, rape, and sexual battery.

Crawford received three separate trials, which occurred in the following order: (1) the aggravated assault of Cutberth, (2) the rape and kidnapping of Roberts, and (3) the murder of Ray. For each, Crawford pressed an insanity defense. At the aggravated-assault trial (1) and the murder trial (3), Crawford had an expert testify that he was insane at the time of the incidents. At the rape trial (2), Crawford pressed a substantively identical insanity defense but only had lay witnesses testify. He also challenged the kidnapping charge on the facts and the rape charge on the theories that Roberts consented, or alternatively, that Roberts and Crawford never had sex. Crawford was convicted of raping Roberts (but acquitted of kidnapping) and was sentenced to 46 years of imprisonment. Crawford was convicted of assaulting Cutberth and was sentenced to 20 years of imprisonment. Crawford was convicted of murdering Ray and was sentenced to death.

## B.

The present appeal involves only Crawford's conviction for raping Roberts. Crawford directly appealed his rape conviction in state court and almost succeeded in getting a new trial: The Mississippi Supreme Court affirmed his conviction by a 5–4 vote. *See Crawford v. State*, 192 So. 3d 905 (Miss. 2015).

Crawford next tried his luck at state postconviction relief. Again, he failed. Crawford argued for the first time that the trial court violated his procedural due process right to expert assistance in his insanity defense under *Ake v. Oklahoma*, 470 U.S. 68 (1985), along with many other claims. The Supreme Court of Mississippi held that Crawford procedurally defaulted his *Ake* claim because it "could have been raised in the direct appeal." The court also denied Crawford's ineffective-assistance-of-counsel claims and found the rest of Crawford's claims to be "without merit."

Crawford next filed a habeas petition in federal district court, raising thirteen claims. The district court denied Crawford's petition but granted Crawford a certificate of appealability ("COA") on all thirteen claims. Crawford timely appealed.

## II.

Crawford raises only three claims on appeal.[1] First, Crawford claims that his lawyer provided ineffective assistance by failing to raise an *Ake* claim on direct appeal. Second, Crawford raises an *Ake* claim and argues that the claim is not procedurally barred because his appellate counsel's ineffectiveness establishes cause and prejudice. Third, Crawford claims that his trial counsel provided ineffective assistance.

All fail. We first (A) provide some background on (1) AEDPA and (2) ineffectiveness claims. We then (B) conclude that Crawford failed to establish ineffective assistance of appellate counsel. We last (C) determine that Crawford has not established ineffective assistance of trial counsel.

## A.

### 1.

AEDPA first. Everyone agrees AEDPA's strictures—including its relitigation bar in 28 U.S.C. § 2254(d)—apply to each of Crawford's ineffectiveness arguments. *See Lucio v. Lumpkin*, 987 F.3d 451, 465 (5th Cir. 2021) (en banc) (plurality op.). Section 2254(d) "restores the *res judicata*

---

[1] Although Crawford obtained a COA on thirteen claims, Crawford provides arguments on only three claims and tries to incorporate by reference his application before the district court for the rest. He has thus abandoned the ten unbriefed claims. *See, e.g.*, *Turner v. Quarterman*, 481 F.3d 292, 295 n.1 (5th Cir. 2007) (arguments incorporated by reference from prior briefing are "not adequately briefed" and forfeited); *McGowen v. Thaler*, 675 F.3d 482, 497 (5th Cir. 2012).

rule" that long underpinned habeas "and then modifies it" by providing "narrow exceptions." *Langley v. Prince*, 926 F.3d 145, 155 (5th Cir. 2019) (en banc). As relevant here, Crawford must show the state court's adjudication of the claim "resulted in a decision that . . . involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

To meet the unreasonable-application exception to the relitigation bar, "a prisoner must show far more than that the state court's decision was merely wrong or even clear error." *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (per curiam) (quotation omitted). "Rather, the relitigation bar forecloses relief unless the prisoner can show the state court was *so* wrong that the error was 'well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Langley*, 926 F.3d at 156 (quoting *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (per curiam)). "In other words, the unreasonable-application exception asks whether it is 'beyond the realm of possibility that a fairminded jurist could' agree with the state court." *Ibid.* (quoting *Woods v. Etherton*, 578 U.S. 113, 118 (2016) (per curiam)).

To apply the relitigation bar, we first "must identify the relevant state-court 'decision.'" *Lucio*, 987 F.3d at 465. Here, the relevant decision is the sole state court opinion involving ineffectiveness: the Mississippi Supreme Court's order denying Crawford's application for leave to file a motion to vacate his conviction and sentence. ROA.3167–68. All agree that the court's denial of leave is a decision "adjudicat[ing] . . . the merits" of Crawford's ineffectiveness claims. *See* 28 U.S.C. § 2254(d). And for good reason. The Mississippi Supreme Court plainly rejected those claims on the merits: "The Court further finds that the claims of ineffective assistance of counsel fail to meet the *Strickland v. Washington* standard." ROA.3167; *cf. Harrington v. Richter*, 562 U.S. 86, 100 (2011) ("This Court now holds and reconfirms that

§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

But the Mississippi Supreme Court did not explain why it rejected Crawford's *Strickland* claim. This is significant. When "a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. We "must determine what arguments or theories . . . *could have supported*[] the state court's decision; and then [we] must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* at 102 (emphasis added); *see also Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018) (per curiam) (same); *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011) (same). That is, we imagine the reasons that Story, Brandeis, and Frankfurter could've dreamt up to support the state court's decision, and then we ask whether every reasonable jurist would conclude that all those hypothetical reasons violate the relitigation bar. That makes § 2254(d) very close to a *res judicata* provision.

2.

Next, ineffective assistance of counsel. The Sixth Amendment generally obliges the State to provide an indigent defendant with counsel. *See* U.S. Const. amend. VI; *Gideon v. Wainwright*, 372 U.S. 335 (1963). But not just any counsel. According to the Supreme Court, States must provide effective counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). That's because "a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all." *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).

To establish ineffectiveness, Crawford must show that counsel's failure was both (1) objectively deficient and (2) prejudicial. *Strickland*, 466

U.S. at 687. "*Strickland*'s first prong sets a high bar." *Buck v. Davis*, 137 S. Ct. 759, 775 (2017). "To establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness." *Richter*, 562 U.S. at 104 (quotation omitted). There is "a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Ibid.* (quotation omitted). And to show deficient performance, the defendant must show that his lawyer was so bad as to be "no counsel at all." *Lucey*, 469 U.S. at 396.[2]

AEDPA makes it even more difficult to win an ineffectiveness claim. The "more general the rule, the more leeway state courts have." *Kayer*, 141 S. Ct. at 523 (quotation omitted). And "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation omitted); *see also Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021) (per curiam) ("doubly deferential"); *Mirzayance*, 556 U.S. at 123 ("doubly deferential").

## B.

We now address the first two claims, each turning on whether Crawford's appellate counsel was ineffective for failing to raise *Ake* on direct appeal. "Declining to raise a claim on appeal . . . is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017). "In most cases, an unpreserved trial error will not be a plainly stronger ground for

---

[2] Because Crawford's lone preserved *Strickland* claim fails at prong one, we need not discuss the prejudice prong in this case. *See infra* 10–13.

appeal than preserved errors." *Ibid.* "Thus, in most instances in which the trial court did not rule on the alleged trial error (because it was not preserved), the prisoner could not make out a substantial claim of ineffective assistance of appellate counsel." *Ibid.*

Here, the district court held the state court could've reasonably found the *Ake* claim unpreserved. We agree. Crawford's trial counsel withdrew his *Ake* motion, so the trial court never ruled on it. Crawford must thus show that every fairminded jurist would conclude that this is the extraordinary instance where an unpreserved claim was stronger than the preserved claims, and that appellate counsel's failure to press the unpreserved *Ake* claim was tantamount to providing no appellate counsel at all.

Crawford cannot come close to that showing. His appellate counsel raised numerous issues on direct appeal and nearly won a new trial from the State's highest court. *See Crawford*, 192 So. 3d at 905 (vote of 5–4). It thus borders on absurd to contend that appellate counsel was deficient for failing to raise an unpreserved claim, or that the state court transgressed the every-reasonable-jurist standard.

But even if the *Ake* claim were preserved, the ineffectiveness claim still fails. Even though Crawford has the burden to show ineffectiveness under AEDPA's strictures, he merely argues that he meets *Ake. See Burt v. Titlow*, 571 U.S. 12, 22–23 (2013) ("[T]he burden to show that counsel's performance was deficient rests squarely on the defendant." (quotation omitted)). That's not close to enough. He has not shown that his *Ake* argument is *so* strong that his appellate counsel's failure to raise it was tantamount to providing no counsel at all. *Lucey*, 469 U.S. at 396. And even if he could make that showing, which he doesn't even try to make, Crawford would still fail because he hasn't tried to show that his *Ake-Strickland* claim would satisfy AEDPA's relitigation bar.

No. 20-61019

C.

Crawford's ineffective-assistance-of-trial-counsel claim fares no better. We (1) provide two independent reasons that doom Crawford's claim. Then we (2) reject Crawford's remaining counterarguments.

1.

A fairminded jurist could conclude that the trial counsel's performance was not deficient and prejudicial. That's for two independent reasons.

First, the jury found Crawford not guilty of the kidnapping charge. Crawford does not dispute that his counsel's performance contributed to this result. It's thus difficult to say that the State failed to provide Crawford with counsel that was effective to some extent and that Crawford was "in no better position than one who has no counsel at all." *Lucey*, 469 U.S. at 396.

Second, before the rape trial began, the same trial counsel tried an insanity defense in the related assault trial, and the jury rejected it—even though counsel presented an expert who testified that Crawford was insane. In the subsequent rape trial, counsel tried something different: He presented a substantively identical insanity defense but with lay testimony instead of the prior expert whose testimony was already rejected, and he tried to raise reasonable doubt as to the rape charge based on a theory of consent and a theory that Crawford and Roberts never had sex. A fairminded jurist could conclude that counsel made an adequate strategic choice not to do the same thing over again and expect a different result.

2.

Crawford's remaining counterarguments are unpersuasive.

Crawford argues that we can't evaluate trial counsel's overall conduct; instead, we must dissect the trial counsel's insanity-defense

performance in a vacuum. Not so. *Strickland*'s prejudice prong *requires* that a court consider whether the challenged act or omission changed the result of the proceeding. *Strickland*, 466 U.S. at 691 (holding an "error by counsel" doesn't "warrant setting aside the judgment of a criminal proceeding" where in the context of the whole proceeding the identified error "had no effect on the judgment"). That means looking at trial counsel's overall conduct in the context of the whole proceeding and determining whether the identified error would have changed the outcome.

But even if we focused on the insanity defense alone, Crawford still cannot surmount AEDPA's relitigation bar. Contrary to Crawford's suggestion, every fairminded jurist would not think that the absence of an expert for an insanity defense is *per se* error. The Supreme Court has "often explained that strategic decisions—including whether to hire an expert—are entitled to a strong presumption of reasonableness." *Reeves*, 141 S. Ct. at 2410 (quotation omitted). That's why "*Strickland* does not . . . require[] for every prosecution expert an equal and opposite expert from the defense. . . . When defense counsel does not have a solid case, the best strategy can be to say that there is too much doubt about the State's theory for a jury to convict." *Richter*, 562 U.S. at 111. And Crawford's first jury heard his insanity defense, replete with expert testimony, and rejected it—thus showing counsel the defense was weak. *Cf. Mirzayance*, 556 U.S. at 124 ("Rather, his counsel merely recommended the withdrawal of what he reasonably believed was a claim doomed to fail. The jury had already rejected medical testimony about Mirzayance's mental state in the guilt phase, during which the State carried its burden of proving guilt beyond a reasonable doubt."). Thus, a fairminded jurist could find the strategic choice to cross-examine the State's experts and present lay testimony to be adequate performance.

Crawford offers a hodgepodge of cases, but none helps him. In fact, only one of his cases (*Hinton v. Alabama*, 571 U.S. 263 (2014) (per curiam)) could even potentially help him because *Hinton* is his only case that found deficient performance. *Id.* at 274. And we've held that only a case finding deficient performance can clearly establish the law for an ineffectiveness claim under § 2254(d). *See Lucio*, 987 F.3d at 485 ("We are aware of no authority for turning the Supreme Court's rejection of one prisoner's claim into clearly established law that supports a second prisoner's claim.").

*Hinton*, however, doesn't help either. If a state court "must extend a rationale" from *Hinton* before "it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision" and thus was not sufficient to pass the relitigation bar. *White v. Woodall*, 572 U.S. 415, 426 (2014). This follows from the statutory text: "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* [the Supreme] Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error." *Ibid.*

At the very least, a state court would've had to extend *Hinton* to grant relief here. In *Hinton*, the Court concluded that trial counsel's "failure to request additional funding in order to replace an expert he knew to be inadequate because he mistakenly believed that he had received all he could get under [state] law constituted deficient performance." 571 U.S. at 274. The Court found two features significant. First was that "the core of the prosecution's case was the state experts' conclusion . . . and effectively rebutting that case required a competent expert on the defense side." *Id.* at 273. Second was that counsel's failure "was based not on any strategic choice but on a mistaken belief that available funding was capped." *Ibid.*

Neither of the two features the Supreme Court found significant in *Hinton* is present here. *See, e.g.*, *Woods v. Donald*, 575 U.S. 312, 317–18 (2015) (per curiam) ("Because none of our cases confront the specific question presented by this case, the state court's decision could not be 'contrary to' any holding from this Court," nor an "unreasonable application" thereof. (quotation omitted)); *Langley*, 926 F.3d at 160 (collecting cases). Given defense counsel's hybrid strategy, the "core" of the prosecution's case was proving that the rape occurred, not that Crawford was sane. And Crawford points to no mistake in law that led to counsel's choice. On top of that, *Hinton* did not involve a situation where a jury previously rejected the substantively identical defense with expert assistance for a contemporaneous crime. These differences are fatal.

### III.

Moreover, the Supreme Court recently released two landmark habeas decisions—*Brown v. Davenport*, 142 S. Ct. 1510 (2022), and *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022)—that direct us to refocus our attention in AEDPA cases. In *Davenport*, the Supreme Court made clear that "Congress invested federal courts with discretion when it comes to supplying habeas relief—providing that they 'may' (not must) grant writs of habeas corpus, and that they should do so only as 'law and justice require.'" 142 S. Ct. at 1523 (quoting 28 U.S.C. §§ 2241, 2243). This meant that AEDPA "did not guarantee relief upon . . . satisfaction" of its conditions; instead, "even a petitioner who prevails under AEDPA must still today persuade a federal habeas court that 'law and justice require' relief." *Id.* at 1524 (quoting 28 U.S.C. § 2243); *see also Pacheco v. El Habti*, 48 F.4th 1179, 1187–88 (10th Cir. 2022) (noting, even after AEDPA, federal courts retain "traditional equitable authority" (citing *Davenport*, 142 S. Ct. at 1524)).

About a month later, the Supreme Court in *Ramirez* doubled down on the proposition that passing AEDPA's strictures and the preexisting equitable doctrines are necessary but not sufficient to get habeas relief:

> To ensure that federal habeas corpus retains its narrow role, AEDPA imposes several limits on habeas relief, and we have prescribed several more. And even if a prisoner overcomes all of these limits, he is never entitled to habeas relief. He must still persuade a federal habeas court that law and justice require it.

142 S. Ct. at 1731 (quotation omitted).

*Davenport* and *Ramirez* thus indicate that courts should apply a two-prong framework to adjudicate habeas petitions from state prisoners.[3] The first prong is business as usual: whether the state prisoner satisfies AEDPA and the usual equitable and prudential doctrines (*e.g.*, procedural default and prejudicial error). *See Ramirez*, 142 S. Ct. at 1731 ("AEDPA imposes several

---

[3] Crawford is a state prisoner, so we need not determine whether federal courts may employ the two-prong framework in adjudicating § 2255 motions. *See United States v. Cardenas*, 13 F.4th 380, 384 n.* (5th Cir. 2021) ("Section 2255 is, of course, a statutory *substitute* for habeas corpus."); *Beras v. Johnson*, 978 F.3d 246, 252 (5th Cir. 2020) (explaining that while state prisoners file "applications," federal prisoners file "motions"). But there is good reason to think that federal courts can and should. The Supreme Court has made clear that "the '*sole purpose*' of § 2255 was to change the venue for challenges to a sentence." *Wright v. Spaulding*, 939 F.3d 695, 698 (6th Cir. 2019) (Thapar, J.) (emphasis added) (quoting *United States v. Hayman*, 342 U.S. 205, 219 (1952)). The Supreme Court has repeatedly emphasized that there is "no basis for affording federal prisoners a preferred status when they seek postconviction relief." *United States v. Frady*, 456 U.S. 152, 166 (1982); *see also Withrow v. Williams*, 507 U.S. 680, 723 (1993) (Scalia, J., concurring in part and dissenting in part) ("A federal court entertaining collateral attack against a state criminal conviction should accord the same measure of respect and finality as it would to a federal criminal conviction. As it exercises equitable discretion to determine whether the merits of constitutional claims will be reached in the one, it should exercise a similar discretion for the other."). For this reason, we generally apply the same equitable and prudential doctrines to federal and state prisoners. *See United States v. Vargas-Soto*, 35 F.4th 979, 996 & n.6 (5th Cir. 2022).

limits on habeas relief, and *we have prescribed several more*." (emphasis added) (quotation omitted)). The second prong is whether law and justice require granting habeas relief. *See ibid.* ("And *even if* a prisoner overcomes all of these limits, he is never entitled to habeas relief. He must still persuade a federal habeas court that law and justice require it." (emphasis added) (quotation omitted)). Much like qualified immunity after *Pearson v. Callahan*, 555 U.S. 223 (2009), both prongs are necessary to get relief and a court may analyze either one first.[4] *Id.* at 236.

We next (1) explain that law and justice do not compel issuance of the writ in the absence of factual innocence. Then we (2) conclude that Crawford can't make the required showing.

### 1.

As the Supreme Court recently reminded us, habeas is and always has been a discretionary remedy. *See Davenport*, 142 S. Ct. at 1520–24; *Ramirez*, 142 S. Ct. at 1731. In England, the "Great Writ" of habeas corpus *ad subjiciendum* gave common-law courts the discretionary power to investigate the Crown's basis for detaining its subjects. *See* Petition of Right, 3 Car. 1, ch.1, ¶¶ 5, 8 (1628). The Judiciary Act of 1789 gave our new federal courts that same power. *See* § 14, 1 Stat. 81–82. And modern federal courts retain it—though it remains, as always, a discretionary power and not a mandatory obligation. *See* 28 U.S.C. § 2241 ("Writs of habeas corpus *may* be granted . . . (emphasis added)); *id.* § 2243 ("as law and justice require").

---

[4] Jurisdiction is the only exception. That's because "[i]n habeas proceedings, as in every other kind, federal courts must do jurisdiction first. And where jurisdiction is lacking, federal courts also must do jurisdiction last." *Davis v. Sumlin*, 999 F.3d 278, 279 (5th Cir. 2021) (quotation omitted). But whenever the court is assured of its jurisdiction, *Davenport* and *Ramirez* suggest that courts can perform either step first.

Law and justice do not require habeas relief—and hence a federal court can exercise its discretion not to grant it—when the prisoner is factually guilty. *See Davenport*, 142 S. Ct. at 1523 (concluding "guilt[]" is the primary consideration in evaluating whether "law and justice" require the writ (quotation omitted)); Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 142 (1970) ("[W]ith a few important exceptions, convictions should be subject to collateral attack only when the prisoner supplements his constitutional plea with a colorable claim of innocence."). Again, this comports with the historical office of the writ. For the first 500 or so years of the writ's existence, it generally could not be used to challenge a judgment of guilt. *See* Paul D. Halliday, Habeas Corpus: From England to Empire 16–18 (2010) (comparing *habeas corpus ad subjiciendum* to various medieval writs that courts used after Magna Carta); *id.* at 18 (dating the writ's emergence to the latter half of the fifteenth century). That's because the historical purpose of the writ was to ensure that the prisoner's detention comported with due process, and "a trial was generally considered proof he had received just that." *Davenport*, 142 S. Ct. at 1521 (citing *Bushell's Case*, 124 Eng. Rep. 1006, 1009–10 (C. P. 1670)).

Requiring prisoners to show factual innocence also comports with the federalism principles undergirding AEDPA. The Supreme Court emphasized that courts must "adjust the scope of the writ in accordance with equitable and prudential considerations." *Davenport*, 142 S. Ct. at 1523 (quotation omitted). "Foremost among those considerations is the States' powerful and legitimate interest in punishing the guilty." *Ibid.* (quotation omitted); *see also Ramirez*, 142 S. Ct. at 1731 ("To unsettle these expectations is to inflict a profound injury to the powerful and legitimate interest in punishing the guilty, an interest shared by the State and the victims of crime alike." (quotation omitted)); *ibid.* (describing the States' interests and the

significant costs of granting federal habeas relief). The States' preeminent interest is at its apex where, as here, the conviction occurred long before the federal postconviction proceedings. *See, e.g.*, *Edwards v. Vannoy*, 141 S. Ct. 1547, 1554 (2021) ("When previously convicted perpetrators of violent crimes go free merely because the evidence needed to conduct a retrial has become stale or is no longer available, the public suffers, as do the victims."); *Herrera v. Collins*, 506 U.S. 390, 403, 417 (1993) (worrying that "the passage of time only diminishes the reliability of criminal adjudications" and worrying about "the enormous burden that having to retry cases based on often stale evidence would place on the States"). Requiring a state prisoner to show factual innocence in his federal habeas petition thus promotes federalism interests.

Requiring federal habeas petitioners to show factual innocence also protects other parties not before the court. When the Supreme Court erased "[t]he traditional distinction between jurisdictional defects and mere errors in adjudication," "[f]ederal courts struggled with an exploding caseload of habeas petitions from state prisoners." *Davenport*, 142 S. Ct. at 1522; *see also Langley*, 926 F.3d at 154 ("It was not until 1953 that state prisoners could use federal habeas proceedings to relitigate free-standing constitutional claims after pressing and losing them in state court."). Federal courts desperately needed "new rules aimed at separating the meritorious needles from the growing haystack." *Davenport*, 142 S. Ct. at 1523. After all, "[i]t must prejudice the occasional meritorious application to be buried in a flood of worthless ones. He who must search a haystack for a needle is likely to end up with the attitude that the needle is not worth the search." *Brown v. Allen*, 344 U.S. 443, 537 (1953) (Jackson, J., concurring in result). As Judge Friendly explained long ago:

> It defies good sense to say that after government has afforded a
> defendant every means to avoid conviction, not only on the

merits but by preventing the prosecution from utilizing probative evidence obtained in violation of his constitutional rights, he is entitled to repeat engagements directed to issues of the latter type even though his guilt is patent. A rule [requiring prisoners to show innocence] would go a long way toward halting the inundation; it would permit the speedy elimination of most of the petitions that are hopeless on the facts and the law, themselves a great preponderance of the total, and of others where, because of previous opportunity to litigate the point, release of a guilty man is not required in the interest of justice even though he might have escaped deserved punishment in the first instance with a brighter lawyer or a different judge.

Friendly, *supra*, at 157 (quotation omitted).

Factual innocence is an assertion by the defendant that he did not commit the *conduct* underlying his conviction. By contrast, affirmative defenses do *not* implicate factual innocence; they implicate *legal* innocence. *Cf. Bousley v. United States*, 523 U.S. 614, 623 (1998) ("It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency."). Although law and justice can require habeas relief for certain legal errors that are deeply rooted in the writ's history, "mere legal insufficiency" or "legal innocence" are not among them. *Ibid.*[5]

---

[5] As Judge Friendly observed: "the original sphere for collateral attack on a conviction was where the tribunal lacked jurisdiction either in the usual sense or because the statute under which the defendant had been prosecuted was unconstitutional or because the sentence was one the court could not lawfully impose." Friendly, *supra*, at 151 (citing *Ex parte Watkins*, 28 U.S. (3 Pet.) 193 (1830); *Ex parte Siebold*, 100 US. 371 (1879); *Ex parte Lange*, 85 U.S. (18 Wall.) 163 (1873)). Only such legal errors, deeply rooted in the Great Writ's history, will satisfy the law and justice requirement when a prisoner challenges his guilty conviction in a habeas proceeding. We have no occasion to consider, however, what law and justice might require when a prisoner challenges only his *sentence* and not his underlying *conviction*. *Cf. Wilkinson v. Dotson*, 544 U.S. 74, 85 (2005) (Scalia, J., concurring) (noting the phrase "law and justice" has been interpreted to allow prisoners

The colorable-claim-of-factual-innocence requirement critically differs from the prejudicial-error requirement under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). While the prejudicial-error requirement forecloses "relief against constitutional claims on immaterial points, the test on collateral attack generally should be not whether the error could have affected the result but whether it could have caused the punishment of an innocent man." Friendly, *supra*, at 157 n.81. In other words, prejudicial error does not focus on factual innocence but on the significance of the error.

2.

Crawford has not made a colorable claim of factual innocence. Crawford does not deny that he committed the elements of the offense. He raped Roberts. Instead, he at most asserts that he wasn't legally culpable under Mississippi law because of the affirmative defense of insanity. *Cf.* ROA.963 ("Crawford has not provided this Court with any new evidence that, as a factual matter, would show that he did not commit the crime of conviction. Indeed, Crawford does not make the argument at all."). But affirmative defenses go to legal innocence—not factual innocence.

Even if insanity implicated factual innocence, Crawford's innocence claim is not colorable, so law and justice would still require denying his petition. *See* 28 U.S.C. §§ 2241, 2243. Crawford presented substantively identical insanity defenses at all three of his trials. At two of his trials, Crawford presented an expert witness to support his defense. Both juries flatly rejected that Crawford was insane. And one of the trials involved an incident contemporaneous with the rape of Roberts, and the same expert

---

to separately challenge their convictions and their sentences); *Jennings v. Stephens*, 574 U.S. 271, 278–79 (2015) (entertaining habeas challenge to capital sentence where prisoner did not contest his guilt for underlying crime).

No. 20-61019

Crawford wanted for the rape trial (Dr. Hutt) testified at the assault trial. *See Crawford*, 787 So. 2d at 1240, 1243. The State also presented at all three trials two experts who opined that Crawford was sane. There is thus no colorable reason to think that Crawford is insane, much less that he is factually innocent.

\*   \*   \*

Crawford unquestionably raped a 17-year-old girl. AEDPA and "law and justice" both require denying his request for federal habeas relief.

AFFIRMED.